UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:                                                                Case No. 8:09-bk-06369-CED
                                                                      Chapter 7
    Leslie D. Cheaves,

        Debtor.
_____/

Lauren P. Greene, as Chapter 7 Trustee of
the estate of Leslie D. Cheaves,

        Plaintiff,                                    Adv. Pro. No. 8:09-ap-968-CED

v.

Douglas, Knight & Associates, Inc., a
Florida corporation, and
West Coast – Southern Medical Service,
Inc., a Florida corporation,

        Defendants.
_____/

**MEMORANDUM OPINION AND ORDER GRANTING
DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

    The issue raised by the parties' cross motions for summary judgment (Doc. Nos. 21, 25, 28) is whether, using the hypothetical least-sophisticated consumer test adopted by the Eleventh Circuit, a collection letter mailed by a debt collector falsely represented that it was from an attorney in violation of the Fair Debt Collection Practices Act ("FDCPA") and the Florida Consumer Collection Practices Act ("FCCPA"). For the reasons that follow, the Court concludes as a matter of law that the collection letter did not violate either the FDCPA or the FCCPA. Accordingly, the Plaintiff's motion for summary judgment is denied and the Defendants' motions for summary judgment are granted.

*Factual and Procedural Background*

    The facts are not in dispute. Leslie D. Cheaves (the "Debtor") filed a voluntary petition under Chapter 7. The Plaintiff, Lauren Greene (the "Trustee"), is the duly appointed trustee in the Chapter 7 case. The Debtor is indebted to West Coast-Southern Medical Service, Inc. ("West Coast"). Prior to the bankruptcy filing, West Coast retained Douglas, Knight & Associates, Inc. ("DKA") as its collection agent. DKA mailed a collection letter entitled "Validation Notice" (the

"Collection Letter") to the Debtor. The Collection Letter is attached as Exhibit A to the Complaint (Doc. No. 1).

The Collection Letter identifies West Coast as the creditor, and states the account balance and the account number. The text of the Collection Letter reads as follows:

> *Validation Notice*
>
> *We have been obtained by the above creditor who has turned over to us for collection your account for the amount listed above.*
>
> *Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving of this notice, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.*
>
> *Sincerely,*
>
> *Stacy Dash*
> *Subrogation Specialist*

The Debtor's prepetition claims for alleged violations of the FDCPA and the FCCPA are property of the bankruptcy estate and subject to administration by the Trustee. 11 U.S.C. § 541. The parties agree that the Debtor is a consumer, that the debt owed by the Debtor to West Coast is a consumer debt, that DKA is a debt collector as defined in the FDCPA and that both the FDCPA and the FCCPA apply to the Collection Letter.

In Count I of the Complaint, the Trustee alleges that the Collection Letter violates the FDCPA by falsely representing that it was sent by an attorney.[1] The parties agree that DKA is not an attorney or a law firm. Counts II and III state claims against DKA and West Coast, respectively, for violations of the FCCPA. The Trustee alleges that both Defendants violated Fla. Stat. §§ 559.72(7), (9) and (11) by communicating with the Debtor under the guise of an attorney, willfully engaging in conduct which can reasonably be expected to abuse or harass the Debtor, and asserting the existence of a legal right when the Defendants knew the right did not exist. The Trustee and both Defendants moved for summary judgment. The parties waived oral argument and submitted the motions for the Court's consideration.

---

[1] In Count I, the Trustee also alleged that the Collection Letter violated the FDCPA because its description of the Debtor's right to contest the validity of the debt was confusing. However, the Trustee has abandoned that claim (Doc. No. 21, Exh. 3), and it is not addressed herein.

*Summary of the Law*

   A.     The Fair Debt Collection Practices Act

In 1977, Congress enacted the FDCPA, 15 U.S.C. § 1692, *et seq.*,[2] to combat debt collectors' abusive, deceptive, and unfair debt collection practices and to ensure that debt collectors who adhere to ethical, non-abusive debt collection practices are not placed at a competitive disadvantage. As noted during the congressional hearings preceding the passage of the Act, some of the more disturbing debt collection tactics included midnight phone calls, threats, and disclosure of the debtor's confidential information to family and friends. S. Rep. No. 95-382 (1977), reprinted in 1977 U.S.C.A.A.N. 1695, 1696. Generally, the FDCPA applies only to debt collectors, who are defined as persons who use instrumentalities of interstate commerce or the mails to collect the debt of another. Section 1692a(6).

The provision of the FDCPA at issue in this case, section 1692e, states, in part, as follows:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
> 
> . . .
> 
> (3) The false representation or implication that any individual is an attorney or that any communication is from an attorney.
> 
> . . .
> 
> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

   B.     The "Least-Sophisticated Consumer" Standard

The Eleventh Circuit and the majority of federal circuit courts have adopted the "least-sophisticated consumer" standard in analyzing claims brought under the FDCPA.[3] *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168 (11th Cir. 1985). The least-sophisticated consumer standard is consistent with FDCPA's goal of expanding the consumer protections originally provided by the

---

[2] Unless otherwise stated, all statutory references are to the FDCPA, 15 U.S.C. § 1692, *et seq.*

[3] The Second, Third, Fourth, Sixth and Ninth Circuits also apply the "least-sophisticated consumer" standard. *Russell v. Equifax, A.R.S.*, 74 F.3d 30 (2d Cir. 1996); *Brown v. Card. Serv. Ctr.*, 464 F.3d 450 (3d Cir. 2006); *U.S. v. Nat'l Fin. Servs. Inc.*, 98 F.3d 131 (4th Cir. 1996); *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324 (6th Cir. 2006). The Seventh and Eighth Circuits apply the "unsophisticated consumer" standard. *Durkin v. Equifax Check Servs. Inc.*, 406 F.3d 410 (7th Cir. 2005); *Strand v. Diversified Collection Serv., Inc.*, 380 F.3d 316 (8th Cir. 2004).

Federal Trade Commission Act. *Id.* at 1172. "The purpose of the least-sophisticated-consumer standard, here as in other areas of consumer law, is to ensure that the [FDCPA] protects the gullible as well as the shrewd." *Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 90 (2d Cir. 2008).

The Court applies this objective standard mindful of the FDCPA's dual purpose: to protect consumers against deceptive debt collection practices and to protect debt collectors from unreasonable constructions of their communications. *Id.* " 'The least sophisticated consumer' can be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care." *Clomon v. Jackson*, 988 F.2d 1314, 1319 (2d Cir. 1993). "However the test has an objective component in that '[w]hile protecting naïve consumers, the standard also prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness. . . . ' " *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1194 (11th Cir. 2010) (citations omitted).

C.  The Florida Consumer Collection Practices Act

The goals of the FCCPA are similar to those of the FDCPA. *See* Fla. Staff. An., S.B. 94, Mar. 6, 2001. The FCCPA provides that in construing its provisions, "due consideration and great weight shall be given to the interpretation of the Federal Trade Commission and the federal courts relating to the [FDCPA]." *Bacelli v. MFP, Inc.,* 2010 WL 2985699 (M.D. Fla. 2010), citing Fla. Stat. § 559.77(5). *See In re Cooper*, 253 B.R. 286, 290 (Bankr. N.D. Fla. 2000) (stating that "the [FCCPA] is narrower in scope than the federal act [FDCPA].").

In Counts II and III, the Trustee alleges that DKA and West Coast,[4] respectively, violated Fla. Stat. §§ 559.72(7), (9) and (11) by "using the stationery of an attorney" through the use of the name "Douglas Knight & Associates, Inc." on the Collection Letter.

The relevant portions of Fla. Stat. § 559.72 state

> In collecting consumer debts, no person shall:
> . . .
>
> (7) Willfully communicate with the debtor or any member of her or his family with such frequency as can reasonably be expected to harass the debtor or her or his family, or willfully engage in other conduct which can reasonably be expected to abuse or harass the debtor or any member of her or his family.
> . . .
>
> (9) Claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that right does not exist.

---

[4] Unlike the FDCPA, liability under the FCCPA is not limited solely to debt collectors, and applies to any person collecting a consumer debt, including the original creditor. Fla. Stat. § 559.72

> . . .
>
> (11) Communicate with a debtor under the guise of an attorney by using the stationery of an attorney or forms or instruments that only attorneys are authorized to prepare.
>
> . . .

*Discussion*

A.   Standard of Review

Summary judgment is proper if the pleadings and supporting documents, viewed in the light most favorable to the non-moving party, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co., Inc.,* 357 F.3d 1256, 1259-60 (11th Cir. 2004). Issues of fact are genuine if a reasonable finder of fact considering the evidence presented could find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

Some courts that apply the least-sophisticated consumer standard have made their determinations as a matter of law.[5] This Court concurs with the court's holding in *Martinez v. Law Offices of David J. Stern, P.A.*, 266 B.R. 523, 533 (Bkrtcy. S.D. Fla. 2001), that "since the standard applied is objective in nature, i.e., a hypothetical least sophisticated consumer, the determination is a question of law." The Court is mindful of the Eleventh Circuit's ruling in *LeBlanc v. Unifund CCR Partners,* 601 F.3d 1185 (11th Cir. 2010). In *LeBlanc*, the court held that determining whether a collection letter "could reasonably be perceived as a 'threat to take legal action' under the 'least-sophisticated consumer standard' . . . is best left to jury decision." *Id*. at 1195. However, in this case there has been no jury demand and this Court will serve as the finder of fact. Therefore, it is appropriate for this Court to make its determination in the context of a motion for summary judgment.

B.   The Collection Letter Does Not Violate the FDCPA

It is for good reason that a collection letter that falsely represents that it is from an attorney violates sections 1692e(3) and (10). As the Seventh Circuit in *Avila v. Rubin*, 84 F.3d 222, 229 (7th Cir. 1996) pointed out,

---

[5] *See Federal Home Loan Mortg. Corp. v. Lamar*, 503 F.3d 504, 508 n. 2 (6th Cir. 2007) (effectiveness of validation notice is a question of law); *Wilson v. Quadramed Corp.*, 225 F.3d 350, 353 n. 2 (3d Cir. 2000); *Terran v. Kaplan*, 109 F.3d 1428, 1432-33 (9th Cir. 1997); *Swanson v. Southern Oregon Credit Serv., Inc.*, 869 F.2d 1222, 1225-26 (9th Cir. 1988); *Russell v. Equifax A.R.S.*, 74 F.3d 30, 33, 35 (2d Cir. 1996); *but see Walker v. National Recovery, Inc.*, 200 F.3d 500, 503 (7th Cir. 1999) (holding that "whether a given message is confusing [for the purposes of FDCPA] is . . . a question of fact, not of law or logic.").

> An unsophisticated consumer, getting a letter from an "attorney," knows the price of poker has just gone up. And that clearly is the reason why the dunning campaign escalates from the collection agency, which might not strike fear in the heart of the consumer, to the attorney, who is better positioned to get the debtor's knees knocking.

The Trustee alleges that the Collection Letter falsely represents and implies that DKA is an attorney or a law firm for three reasons: first, the Collection Letter's letterhead displays the name "Douglas, Knight & Associates, Inc.," implying that DKA is a law firm; second, the job title ("Subrogation Specialist") of the letter's signatory is a legal and highly technical title that also implies that the letter was sent by a law firm; and lastly, because the first sentence of the collection letter stating that DKA has been "obtained by" West Coast further implies that DKA is an attorney or law firm.

Although the fact that DKA is not a law firm is not in dispute, the Trustee argues, without authority, that the wording "& Associates" in DKA's name is most commonly associated with law firms. In support of that argument, the Trustee relies on *Veillard v. Mednick*, 24 F. Supp. 2d 863 (N.D. Ill. 1998). In *Veillard*, the court held that a collection letter sent by a debt collector could have misled an unsophisticated debtor into believing that the letter was sent by an attorney, even though the word "attorney" did not appear on the letter. In *Veillard*, the letter was sent on letterhead titled "Richard Mednick & Associates," and came from "J. Dancer for Richard M. Mednick." *Id.* at 867. The court concluded that "it would be unusual for a non-lawyer, using the connotation 'and Associates' to be involved in the business of collecting debts," and that

> [i]n today's world, a person does not need to have a Sullivan's Directory or other legal publication to determine that Richard Mednick and Associates is a law firm. The unsophisticated consumer need only request a telephone number from directory assistance to determine that Mednick and Associates is a law firm
> *Id.*

But the facts in *Veillard* are very different than those present here; in *Veillard*, Richard Mednick actually was an attorney. As the court stated, it would not be difficult for an unsophisticated consumer to make that determination. The facts herein are much closer to those in *Zaborac v. Phillips and Cohen Associates, Ltd.*, 330 F. Supp. 2d 962 (N.D. Ill. 2004). In *Zaborac*, the plaintiff argued that the word "associates" inherently conveyed the appearance that "Phillips and Cohen Associates, Ltd.," was a law firm. The court, applying the "unsophisticated consumer" standard, found the plaintiff's argument to be "plain folderol" stating,

> It is obvious that any correlation between the use of the word "associates" in a name and the identification of that name as denoting a law firm requires a level of sophistication, rather than the converse. *Id.* at 969.

6

The court went on to say that documentation provided by "P & C" demonstrated that the term "associates" is "in no way limited to law firms but is used as well by a wide variety of businesses not engaged in the practice of law." *Id.* at 969. The *Zaborac* court went even further, holding that even with the inclusion of the honorific "Esq." in the name of the collection letter's signatory ("Adam S. Cohen, Esq."), the collection letter was not likely to be confusing to an unsophisticated consumer. *Id.* at 969, 970.

The Trustee points out, accurately, that the *Zaborac* case was decided under the "unsophisticated consumer" standard used in the Seventh Circuit, rather than the "least-sophisticated consumer" standard adopted by the Eleventh Circuit. In *Avila v. Rubin*, 84 F.3d at 226, the Seventh Circuit described its "unsophisticated consumer" standard:

> After some anguish, we held in *Gammon v. GC Servs. Ltd. Partnership,* 27 F.3d 1254, 1257 (7th Cir. 1994), that claims against debt collectors under the FDCPA are to be viewed through the eyes of the "unsophisticated consumer." We rejected what may be viewed as a somewhat lesser standard - the "least sophisticated consumer," used by other courts. We reiterate our standard today, but we don't want to be involved in the splitting of split hairs. Anyway it's viewed, the standard is low, close to the bottom of the sophistication meter.

Assuming, *arguendo,* that a "least-sophisticated consumer" is even less sophisticated that an "unsophisticated consumer," the court's reasoning in *Zaborac* still applies – it would require some level of sophistication for a consumer to conclude that the words "& Associates" denotes a law firm. And the court in *Rumpler v. Phillips & Cohen Assocs., Ltd.*, 219 F. Supp. 2d 251 (E.D.N.Y. 2002), using the Second Circuit's least-sophisticated consumer test, came to the same conclusion as the *Zaborac* court on identical facts.

The Trustee's second argument, that the use of the phrase "Subrogation Specialist" after Stacy Dash's name in the Collection Letter implies attorney involvement, also fails. The Court agrees with the Trustee that the word "subrogation" is a technical word that is not always understood by the least-sophisticated consumer. In fact, this Court has no idea what the words "subrogation specialist" mean. The Trustee has not met her evidentiary burden that a least-sophisticated consumer would be misled into thinking that the words "Subrogation Specialist" implied that the Collection Letter was sent by an attorney.

Finally, the Trustee argues the Collection Letter's statement "[w]e have been *obtained by* the above creditor who has turned over to us for collection your account for the amount listed above" (emphasis added) implies that a law firm is involved. The Court disagrees. Any number of words, including "hired," "employed," "procured," "retained," "secured" or "engaged," could have been used in the Collection Letter to indicate that DKA was collecting the debt on behalf of West Coast. Using the least-sophisticated consumer standard, the Court finds that the use of word "obtained" does not indicate the involvement of an attorney.

This Court finds, as a matter of law, using the least-sophisticated consumer standard, that the Collection Letter did not violate sections 1692e(3) or (10).

C.   The Collection Letter Does Not Violate the FCCPA

The Trustee's FCCPA claims rest entirely upon the allegations supporting her FDCPA claims. Because the Court has found, as a matter of law, using the least-sophisticated consumer standard, that the Collection Letter does not violate the FDCPA, there is likewise no FCCPA violation. As the Collection Letter does not represent that it was sent by an attorney, there is no violation of Fla. Stat. § 559.72 (11). Thus it follows that the Collection Letter does not constitute the willful engagement "in other conduct which can be reasonably expected to abuse or harass the debtor" in violation of Fla. Stat. § 559.72(7) or the assertion of "the existence of some other legal right when such person knows that the right does not exist" in violation of Fla. Stat. § 559.71(9).

*Conclusion*

For the foregoing reasons, the Court concludes that the Trustee has not met her evidentiary burden, and as a matter of law, using the "least-sophisticated consumer" standard, the Defendants have not violated either the FDCPA or the FCCPA. Accordingly, it is

**ORDERED**

1.   The Trustee's Motion for Summary Judgment (Doc. No. 28) is DENIED.

2.   Defendant DKA's Motion for Summary Judgment (Doc. No. 21) is GRANTED.

3.   Defendant West Coast's Motion for Summary Judgment (Doc. No. 25) is GRANTED.

**DONE** and **ORDERED** in Chambers at Tampa, Florida, on November 08, 2010 _____.

_____
Caryl E. Delano
United States Bankruptcy Judge